in this case is Russell v. Scott. Mr. McClain, good morning. I see you reserve two minutes for rebuttal and you can begin whenever you're ready. Good morning, Your Honors. David McClain representing the defendant, Jason Scott, correctional officer. The principal inquiry in this case is whether the contacted issue is incidental to legitimate official duties. The district court buried the lead at page 11 of its opinion. This legal error infected the rest of its analysis with results. Let me just, I just want to make sure we agree what the clearly established right is. I think there's intentional contact with an inmate's genitalia or other intimate area which serves no peniological purpose and is undertaken with intent to gratify or humiliate the inmate violates the Eighth Amendment. That's the right we're talking about here, right? I know. That is clearly established law, right? That is clearly established law. Okay. And we are arguing, I'm sorry. No. And on the issue, I think you said in your reply that on his version of the facts, your reply at page one, the credible version of events, they disagree with this. They think there's more than this, but at least you think that the defendant, Scott, made direct contact with the plaintiff's penis for a couple of seconds, right? So you can see that that's the credible version of the events. Yes?  Okay. Absolutely. So the only issue then under Crawford is whether or not that contact could have been gratuitous to humiliate Mr. Russell, right? Isn't that really what this boils down to? It is whether there was a legitimate peniological purpose for the contact. If it was gratuitous, it was done to humiliate, and there was no legitimate peniological purpose, then it violates the Constitution, right? Correct. However, the assessment of whether there was a legitimate purpose was never properly done. Well, let me ask you, the comment that Mr. Russell says Officer Scott made after the incident, he said, and I know you have some issues with what he said in the grievances versus what he said at his deposition, but he said this in the grievance the day after the incident. He said that your client said, how'd you like that MFR? And slammed a heavy metal door on his arm. So why isn't, I mean, there's a lot of reasonable inferences I guess you could draw from that, but why isn't at least one reasonable inference from that statement that Officer Scott did it gratuitously? He didn't have any reason to do it. He did it to humiliate him because he was mad at him for some reason. Isn't that a reasonable inference from that statement? That statement is immaterial to the determination of whether or not the contact was subject to legitimate purposes. I want you to finish this question, but when you are answering that, I'm hoping you can also work in what sort of legitimate peniological purpose there is when someone is a pre-trial detainee and how we deal with what Darnell tells us about that. So just please answer that question that Judge Bianco did, but follow up real quick with what I just asked. Absolutely. The legitimate peniological purpose or the objective prong of the 14th Amendment as described in Kingsley v. Hendrickson has to be made from the perspective of a reasonable officer on the scene, including what the officer knew at the time, and must account for the legitimate interest stemming from the government's need to manage the facility in which the individual is detained. Officer Scott was in the process of implementing a fairly elaborate process for administering a top shelf contraband, Suboxone, and therefore can't understand how you said that statement is immaterial to whether or not it was gratuitous or not. If he had said to him after the incident, I did that for no reason. I did that for no reason. I just wanted to humiliate you. That would be material, right? That would be material. That would show he did not need to do that. Even though there could be a legitimate purpose in searching him for the medication, that wasn't the purpose. He didn't need to do it. He said overtly, I did it to humiliate you. You would agree that's material, right? And that would be a different case, Your Honor, yes. That's a different case because all we're trying to decide is whether or not there's a reasonable inference when he says something like that, that that's exactly what he meant. But just to say quite explicitly, but if you say how did you like that MFR, you're saying that that's not a reasonable inference, that he didn't need to do it? That comment came after Mr. Russell admittedly had become irate and was screaming obscenities at Officer Scott and was not directly connected with the incident at issue. And to begin with, the proper analysis of whether there could be a legitimate interest for the contact was never done because he was administering this medication distribution process, the whole point of which is to prevent smuggling of Suboxone into the facility. This objective prong, I think, is what you're referring to with respect to Darnell versus Pinero is the same under the Eighth Amendment and the Fourteenth Amendment. Okay. Well, I think we can, we can agree with that. My question is, is that after Darnell, which I think pretty plainly says that pediological interests play no legitimate purpose in our inquiry when we're talking about pretrial detainees, how you could suspect that we even get there, assuming that we, I'm not with what Bianca was asking about whether or not there's at least an inference to be drawn that it was done for the purpose of humiliating. So I think you have two things you need, I mean, you answered his question, which we'll either find satisfying or not, but you're telling us the reason his, the answer to that question is not enough is because there needs to be some inquiry about the pediological interests. And I'm asking, didn't a mini-envelop in Darnell say that when we're talking about pretrial detainees, you don't look at the pediological interests? Well, that's not what Kingsley says. Kingsley says you do. And that that determination. Well, Kingsley's an important case, though, because Kingsley says that we have a, it's only objective, right? We don't have the subjective prong of it. So are you conceding that the inquiry that we are looking at now is appropriately just determined by an objective test? No, I'm not, and I don't think that. So, like, I need you to harmonize this for me, because right now I'm not making any sense. We have Kingsley, which says we're dealing with an objective test when we're talking about excessive force. We have our case law from Crawford and Bodie that say that sexual assault claims are a subset of excessive force. And then we have Darnell that says that there's no pediological interest here, and that you only look at an objective, that a pediological purpose doesn't meet. And I need you to make them all square, because right now they're not for me. So the sexual assault claim analysis begins with the determination of whether the contact could be subsequent or whether there could be legitimate interest underlying the contact. And that is done through this process, the determination that I was reading from Kingsley. Even setting, or even considering Darnell, the court has to look at what the correctional officer was potentially confronted with. I think what you're saying is that the way we harmonize it is not that there's an objective and a subjective test, but that our objective test got really beefed up? The objective assessment needs to be done from the perspective of the correctional officer and what he knew at the time. Isn't that the exact opposite of an objective test? No, because correctional officers are due deference in the implementation of policies. How does that make it a subjective test? Because we're looking at the implementation of policies in a correctional facility and trying to understand what correctional professionals are confronting. So if he believed there was a possibility of spitting contraband in his pants, it would be objectively reasonable for him to search. Is that what you're suggesting? Precisely. And he had just witnessed another inmate potentially spitting contraband into Russell's lap. I know, but I just think that that statement on that issue at least creates an issue of fact. The district court says I find this an issue of fact of whether or not statement reveals that it was completely gratuitous and not objectively reasonable, then we don't have jurisdiction. We don't have jurisdiction to review the district court's determination that there's a disputed issue of material fact. We can determine whether it's material, but it's certainly material whether or not he said that. There are significant legal issues here that the district court never addressed in its analysis. But there are also significant factual disputes. And you've given lip service to the idea of accepting plaintiff's version, but throughout your briefing you say he's not credible. This statement doesn't hold up. That statement doesn't hold up. I'm sorry. I'm having a hard time seeing how you've really stipulated to a set of facts that if accepted, that you're really willing to rest on the set of facts the plaintiff has alleged. So the stipulated facts that we would accept for the purposes of this court's determination are that Suboxone is contraband, Officer Scott. But you have to accept his version. I don't get to think your version of facts. That's the whole point about interlocutory jurisdiction. So the only thing that we are disputing is Russell's description of what happened when contact was made with his penis. And how. And whether through or on top of or under the pants. Or you don't dispute that. No. We're conceding that it was under the pants. There was direct physical contact. And the nature of the contact you dispute. The description of it. Okay. So that's not a factual dispute. Well, I think that when an inmate is not expecting contact like that and doesn't want contact like that, it's reasonable for him to experience it in such a way that it would feel like yanking and twisting. But we don't have to get into that because any contact, if it was gratuitous, is unconstitutional. You agree with that, right? Yes. You said that clearly. That any contact, if it is gratuitous, objectively unreasonable. So we don't have to get into how many seconds, whether he was harmed by it. We've said clearly that those don't matter for purposes of constitutional violation. This contact cannot be construed as gratuitous, given the context in which it occurred. Fair enough. All right. We're going to hear from Mr. Bond. Good morning, Your Honors. My name is David Bond. I'm pleased to represent Justin Russell in this matter. Mr. Scott is asking the Court to turn the summary judgment standard on its head, arguing that Mr. Russell has made inconsistent statements, and for that reason, Mr. Russell's testimony ought to be disregarded. But the inconsistencies are not even inconsistencies. In his brief, Mr. Scott repeatedly hones in on whether Mr. Russell ever disclosed that Mr. Scott grabbed, squeezed, and twisted his penis in the grievances he filed with DOC. In these grievance forms, Mr. Russell stated Mr. Scott, quote, unquote, groped my penis and violated me sexually, close quote. He also stated that Mr. Scott squeezed his manhood. Grabbing, groping may carry different, slightly different shades of meaning, but they amount to the same thing here. Mr. Scott fails to explain why, as a matter of law, the precise verbiage used makes any difference. Mr. Scott also argues that the absence of medical records is grounds for setting aside Mr. Russell's testimony, but Mr. Russell testified that he was on lockup at the time and he was not free to just walk over to the infirmary himself. He asked to see a nurse, but no nurse ever came. The injury itself was not very significant. He's characterized it as rug burn and a few scratches that were dissolved within less than a week. That's why there are no medical records. The notes from the prison reduction and the PREA investigation and DOC's internal investigation are hearsay and should be disregarded, but if the Court were to consider then Mr. Russell's explained that the PREA investigator was a woman and he was embarrassed to be speaking with a woman about this. Can I ask, do you think Crawford is still the right way to analyze a pretrial detainee's right against sexual abuse? Well, it provides a floor at the very least, because obviously a pretrial detainee can't have fewer rights than an actual convicted inmate. Right, and would you agree that the appropriate reading of Kingsley is that we have an objective test for excessive force? I'd say it's objective, Your Honor. Okay, and then would you also agree that after Darnell we have clearly established that punishment is not an appropriate consideration for determining behavior that is inflicted upon pretrial detainees? Right, you cannot punish a pretrial detainee. Okay, and so what do we do with the fact that we have two older cases that say that sexual abuse is a subset of excessive force? We have a Supreme Court case that says excessive force cases should be done by an objective standard. We have a more recent mini-en banc that says that deliberate indifference, which is also a subset of excessive force, is done via an objective test. But we don't have any case that says sexual abuse, which is a subset of objective force, now has to be done, which is a subset of excessive force, now has to be viewed through the lens of only an objective test. Is that something that you think our case law actually establishes, or is that something that we need to clear up? You may need to clear this one up for us, Your Honor. Because the district courts are saying that we haven't squarely said what we needed to say on that. And I just said... If we haven't said that, though, how does that affect the qualified immunity analysis in your... Okay, well, let me get into the facts a little bit here and talk about that. Mr. Scott argues that he's entitled to qualified immunity because he had reason to suspect that Mr. Russell diverted medication. But the first part of a qualified immunity test is the right, right? And don't we need that to be able to assess subjective test, objective test? Is sexual assault a subset of excessive force? Isn't that part of establishing the excessive... the right at issue? Whether it's objective or subjective, I think the right to be free from gratuitous sexual contact is... I thought you said at the beginning of your argument, which I think is the correct analysis, is that certainly what we said in Crawford is the Eighth Amendment is a four. So if it's an Eighth Amendment violation under Crawford to have intentional contact with no peniological purpose, then certainly it's also a violation of the Fourteenth Amendment for a And getting back to the facts, Mr. Scott states that another inmate passed in front of Mr. Russell and briefly paused, and he had reason to believe that that inmate had spit out a gob of crushed up medication into a knit cap that Mr. Russell had tucked into his waistband. And he hasn't... And what Mr. Scott had was that there was a possibility that there was medication inside that hat. And so while Mr. Russell denies that he diverted any medication, accepting for the sake of argument that that's what happened, he had already grabbed the hat when he went ahead and then grabbed the penis, according to Mr. Russell. And so what purpose is being served by a patrisk in this case, even if it was outside the clothes? Because he's looking for basically a gob of spit. He's not going to find it by touching the outside of the person's clothing. So the idea that he was going to detect his contraband when he already had secured it is, I think it's somewhat of a red herring. Once the hat was in Mr. Scott's hand, the justification for the search ended. Grabbing Mr. Russell's penis in front of a room full of inmates was not reasonably calculated to turn up contraband, but to humiliate and embarrass Mr. Russell. So as we talked about, any gratuitous contact is a violation of the inmates' constitutional rights, the 14th Amendment. And that is the Crawford v. Cuomo does at least provide a floor. And it's our position that we meet that floor. Then under the issue of exhaustion, Mr. Scott argues that the case should be dismissed for failure to exhaust administrative remedies. And it appears to be based on the fact that the district court allowed Mr. Russell to switch out a claim of assault for a claim of battery to more properly describe the tort that actually occurred. And also the supposedly inconsistent use of verbiage that I discussed earlier, whether he grabbed or twisted or yanked or jerked, it all adds up to the same thing. But this argument ignores reality. Mr. Russell had fully grieved the conduct that had occurred. The change of labels or descriptive terms does not mean that we're dealing with a new claim that was never grieved. And as a practical purpose, the grievance process is closed because this happened over six years ago. And there's no reason to expect that he would even be allowed to bring that grievance at this time. I really don't have anything further, Your Honors. Can I ask, did he need to allege that it was for the purpose of humiliation or sexual gratification? We did allege that. Yes. I mean, did he need to say something? I'm sorry. Did your client need to say something to the effect of hey, stop that. This isn't appropriate. Well, I think it was just the 7 to 10 seconds that the incident occurred, as my client says. My client was just in shock. And he was already in a vulnerable position based on everything that was going on. And he didn't say anything. When he was released, he started backing away and yelling and cursing as we acknowledge. Yes. He was offended, shocked, and according to what he said in his grievances, he felt that he had been violated sexually. Whether there was a sexual purpose, I think the intent here may have been really more just to embarrass and humiliate Mr. Scott because of the setting with a room full of 10 to 12 inmates that were sitting there. And he did hear about that afterwards. I don't know if you have anything else for me. All right. Thank you. Thank you, Your Honors. Okay. Mr. McClain, you have two minutes. To go back to what we were talking about during my principal argument, it is an error of law to construe this alleged contact as gratuitous, given the context in which it occurred. Officer Scott reasonably believed and the District Court found that he had a legitimate reason to conduct a legitimate penological interest to the contact at issue without really explaining why. Here we have an officer who saw another inmate spit contraband or didn't see that but suspected that another inmate spit contraband into Mr. Russell's lap and he is conducting this process of medication distribution for the very reason to prevent smuggling suboxone into the facility, a top shelf contraband. And contraband causes all kinds of problems, not just from inmates being under the influence of it, but then from power dynamics in between inmates if there is contraband in the facility. The gob of crushed medication plaintiff makes our point for us. It was unreasonable to think that just a normal path search over the clothes would find this very small piece of contraband, but highly valuable piece. Thus, Officer Scott could reasonably determine that contact under the pants was necessary. The time frame, I would like to point out that there is direct testimony by Mr. Russell on the appendix, page 046. He testified that Scott touched me sexually, grabbed, yanked, and twisted my penis, and then this is about a three-second span. It happened very quickly. That's direct testimony that was unprompted. And while the length of contact isn't necessarily a determinative factor, it is a factor that courts consider when evaluating whether... I don't understand how that cuts in your favor, right? Isn't there also an inference that anything more than immediate could have been for an impermissible purpose? So that's the ultimate question, is whether Scott's contact exceeded... That is a disputed question, again, right? Well, no. Again, there's no evidence that the length of his contact exceeded the legitimate purposes that it was intended... Except for his statement. Except for his statement. How do you like that, MFR? Yeah. The district court said, Scott's alleged statement, if credited, constitutes some evidence that Scott's alleged conduct was gratuitous, sexually motivated, or done to humiliate Russell. I know you disagree with that, but that's what the district court found was a disputed fact that at least would allow a rational jury to conclude that he didn't need to do that to check for any medication. So in response to that, I would say that it's not a disputed fact, because we're not disputing that... The client admits that he said that? Sorry? The client admits that he said that? I didn't realize he admitted that he said that. Isn't it a disputed fact whether he said that or not? We're not disputing that. For purposes of the qualified immunity? For purposes of qualified immunity, for purposes of this appeal, we're not disputing that. It's immaterial to the determination of Scott's intent, because it came so far after the incident, and after Russell became obstreperous. And under Whitley v. Albers... Thanks. The time is up. Thank you, Mr. McQueen. Thanks, Mr. Bond. Reserved decision. Have a good day.